UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PETER TOPOLSKI, | Case No. 3:24-cv-05878-TMC |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS IN PART |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LICENSING, | |
| Defendant. | |

## I.    INTRODUCTION

Peter Topolski was employed by the Washington Department of Licensing for several years. In 2021, the Department, following a state proclamation during the COVID-19 pandemic, instituted a vaccine requirement for its employees. Mr. Topolski applied for a religious exemption, explaining that he could not get vaccinated because of his faith. The Department agreed and granted the exemption. But the Department denied Mr. Topolski's request that it accommodate his religious exemption by allowing him to work remotely. Ultimately, the Department decided to end Mr. Topolski's employment.

Mr. Topolski sued the Department, alleging federal and state claims. Dkt 1. The Department moved to dismiss Mr. Topolski's claims under Federal Rule of Civil Procedure 12(b)(6), maintaining that the federal constitutional claims were time barred by the statute of

limitations and any remaining claims failed as a matter of law. Dkt. 13. Mr. Topolski responded, arguing that his claims were timely and adequately pled. Dkt. 14. The Court concludes that the statute of limitations has run on Mr. Topolski's federal constitutional claims, and there is no private cause of action for his state constitutional claims. But because Mr. Topolski has also alleged a Title VII violation, which the Department's motion does not address, the Court will not dismiss that claim. Thus, as explained below, the motion to dismiss (Dkt. 13) is GRANTED IN PART and DENIED IN PART, and the Court DISMISSES with prejudice all claims except for the claim brought under Title VII.

## II.    BACKGROUND

Peter Topolski began working for the Washington Department of Licensing on July 17, 2018. Dkt. 1 ¶ 5.1. Mr. Topolski was a "Licensing Services Representative" in the Kent Licensing Service Office. *Id.* Mr. Topolski "remained employed" by the Department of Licensing while the Service Office was closed in March 2020 per Washington State's "Stay Home, Stay Healthy" COVID-19 pandemic order. *Id.* ¶ 5.4.

On August 9, 2021, then-Washington Governor Jay Inslee issued "Proclamation 21.14." *Id.* ¶ 5.5; Dkt 1-2 at 2. The Proclamation required that any employee of a state agency get vaccinated for COVID-19 by October 18, 2021. Dkt. 1 ¶ 5.5; Dkt 1-2 at 2. Following the Proclamation, the Department of Licensing's Interim Deputy Director and Human Resources Director Laurie Milligan sent an email that the Department would require all employees to receive and provide proof of vaccination. Dkt. 1 ¶ 5.6; Dkt 1-2 at 2. The deadline for vaccination was October 18, 2021. Dkt 1-2 at 2. On August 24, Milligan sent a second email stating that medical exemptions would be granted as necessary. Dkt. 1 ¶ 5.7; Dkt 1-2 at 5. This was soon followed by another email on August 27 with a form for requesting religious exemptions. *Id.* ¶ 5.11; Dkt 1-2 at 14. The email also noted that employees who were not vaccinated or did not

have an approved exemption would no longer be employed on October 18, 2021. *Id.*; Dkt 1-2 at 14. Requests for exemptions were to be submitted by October 4, 2021. Dkt 1-2 at 15.

Mr. Topolski requested more information about the accommodation process. Dkt. 1 ¶ 5.12; Dkt 1-2 at 17. He did not receive a reply for a week. Dkt. 1 ¶ 5.12; Dkt 1-2 at 17. The reply explained that Human Resources' workload had grown enormously because of the vaccination accommodation process, and the Department could not offer Mr. Topolski advice on his accommodation request at that time. Dkt 1-2 at 17.

Nevertheless, Mr. Topolski requested a religious exemption. Dkt. 1 ¶ 5.13; Dkt 1-2 at 20–24. His request was approved soon after. *Id.* ¶ 5.15; Dkt 1-2 at 29, 31. But despite approving his religious exemption, Human Resources informed Mr. Topolski that they still needed to determine whether the Department could reasonably accommodate his exemption. Dkt. 1 ¶ 5.16; Dkt 1-2 at 31.

The Department held a Vaccine Mandate Accommodation Decision Meeting on September 30, 2021. Dkt. 1 ¶ 5.18. Mr. Topolski met virtually with Assistant Director of Customer Relations Kim Zabel and Administrator Whitney Montemarano. *Id.* ¶ 5.20. Mr. Topolski described the meeting as "merely a courtesy conversation that an accommodation decision had already been made – namely that the Defendant would grant no accommodation." *Id.* Zabel and Montemarano told Mr. Topolski that they could not accommodate him, but that "if he changed his mind the separation notice would be rescinded if the proof of vaccination were received by October 4, 2021." *Id.* Mr. Topolski explained that he offered "other possible accommodations" that Zabel and Montemarano rejected. *Id.*

After the meeting, Mr. Topolski requested his union file a grievance on his behalf. *Id.* ¶ 5.21. The union sent the grievance to the Department on September 30. Dkt. 1-2 at 69, 72.

On October 1, 2021, the Department sent Mr. Topolski and his supervisor a separation of employment notification. Dkt. 1 ¶ 5.22; Dkt. 1-2 at 75. The Department attached a letter stating that it had found that Mr. Topolski had a sincerely held religious brief exempting him from the vaccination requirement. Dkt. 1 ¶ 5.22; Dkt. 1-2 at 77–78. But the letter also explained that the Department could not provide an accommodation because his position required that he be physically present in a Department of Licensing Facility. Dkt. 1 ¶ 5.22; Dkt. 1-2 at 79–80.

On November 10, 2021, Mr. Topolski met virtually with Milligan and Labor and Operations Manager Wendy Bersano to review his grievance. Dkt. 1 ¶ 5.23. Milligan and Bersano explained that telework would be the only possible accommodation, but "all telework had been filled" and "no reassignments were available[.]" *Id.* Mr. Topolski noted that the Department had not considered increasing the number of telework positions available so that they might be able to accommodate him. *Id.*

Ultimately, Mr. Topolski was let go from the Department. He explains that he has "experienced adverse mental and emotional health effects" as he "recognized he could not in good conscience take part in the vaccine program and experienced severe anxiety at the thought and reality of loss of livelihood." *Id.* ¶ 5.24. He also "suffered significant financial injury as a result of his employment termination." *Id.* ¶ 5.25.

On October 16, 2024, Mr. Topolski sued the Department of Licensing. *See generally id.* He brought claims against the Department for violating his right to privacy under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, *id.* ¶ 7.1; violating his due process rights under the Fourteenth Amendment of the United States Constitution, *id.* ¶¶ 7.2, 7.4; violating the federal PREP Act Emergency Use Authorization Statutes and Washington Informed Consent Statutes, *id.* ¶ 7.3; violating his right to freely exercise his religion under the First Amendment to the United States Constitution, *id.*

¶ 7.5; violating Title VII of the Civil Rights Act of 1964, *id.* ¶¶ 7.5, 7.10; and violating the Occupational Safety and Health Act (OSHA), *id.* ¶ 7.6. Mr. Topolski seeks lost wages, emotional harm damages, and punitive damages. *Id.* ¶¶ 9.1–9.5.

On December 23, 2024, the Department moved to dismiss all of Mr. Topolski's claims. Dkt. 13. The Department argues that Mr. Topolski's federal constitutional claims are barred by the statute of limitations and any remaining claims fail as a matter of law. *Id.* at 5, 6–15. Mr. Topolski responded on January 13. Dkt. 14. In his response brief, Mr. Topolski conceded that two of his claims fail as a matter of law; Claim Three (the PREP Act) and Claim Six (OSHA) both rely on statutes that do not afford Mr. Topolski a private right of action. Dkt. 14 at 9, 10. The Department replied on January 21. Dkt. 15. The motion is ripe for this Court's consideration.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.    DISCUSSION

**A.    Mr. Topolski's federal constitutional claims are barred by the statute of limitations.**

The Department argues that "[t]o the extent Topolski's claims arise out of [the Department's] decision to separate him for failing to obtain a vaccine, they are barred by the statute of limitations." Dkt. 13 at 11. Mr. Topolski responds that "[p]er RCW 4.16.080, the complaint was filed timely within the 3-year statute of limitations." Dkt. 14 at 3. He dismisses the Department's citations to applicable case law by contending that "this was not a typical notice of dismissal under rational grounds, but conditional and with constantly changing standards and policies." *Id.*

The Court disagrees with Mr. Topolski. Mr. Topolski's claims for violations of the U.S. Constitution must be brought under 42 U.S.C. § 1983. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). The statute of limitations for a Section 1983 claim "is borrowed from state law and begins to run when 'the plaintiffs know or have reason to know of

the injury that is the basis of their action.'" *Anderson v. Baseball Club of Seattle*, 542 F. App'x 618, 619 (9th Cir. 2013) (quoting *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002)). "Under Washington law, the statute of limitations for an action for the taking of personal property or injury to other rights is three years." *Anderson*, 542 F. App'x at 619 (citing RCW § 4.16.080(2)). Thus, the statute of limitations for Mr. Topolski's claims against the Department of Licensing is three years—regardless of the basis for the policies or decision.

But the Court must still determine when the statute of limitations began to run. *RK Ventures, Inc. v. City of Seattle* provides guidance. 307 F.3d at 1058. In *RK Ventures*, owners of a former nightclub sued the city under Section 1983, challenging the city's public nuisance abatement ordinance as a violation of their due process rights. *Id.* at 1050. They also argued that the city's abatement actions against the nightclub violated their First Amendment free speech rights and their Fourteenth Amendment equal protection rights. *Id.*

The Ninth Circuit explained that to "determine the timeliness of these claims, we must determine whether appellants have alleged 'discrete acts' that would violate the Constitution that occurred within the limitations period." *Id.* at 1058 (citations omitted). The plaintiffs argued that the City had committed several such acts during the limitations period. *Id.*

The *RK Ventures* plaintiffs argued that the City had "commenced" the public nuisance abatement hearing within the limitations period. *Id.* The abatement hearing did begin within the limitations period. *Id.* The Ninth Circuit accepted this fact. *Id.* But the court held that, in determining when an act occurs for statute of limitations purposes, courts look at when the "'operative decision' occurred and separate[d] from the operative decisions those inevitable consequences that are not separately actionable." *Id.* (first citing *Chardon v. Fernandez*, 454 U.S. 6, 8, (1981) (per curiam); and then citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). The court explained that "[t]he City's decision to institute formal abatement hearings,

and its notice to appellants of that decision, was the 'operative decision' for the purposes of triggering the § 1983 statute of limitations. The actual beginning of the abatement hearing on November 14 was simply the effect of that decision and was not a separately unconstitutional act." *Id.* Put differently, the "operative decision" is the initial source of the injury. And the operative decision starts the clock on the statute of limitations.

Here, the operative decision occurred when the Department told Mr. Topolski that he would be let go because it could not accommodate his religious exemption. Mr. Topolski was notified on September 30, 2021, that, though the Department had found that he had a sincerely held religious belief, there was no way to accommodate him, and he would be formally separated. Dkt. 1 ¶ 5.20. Thus, the injury occurred on September 30. *See RK Ventures*, 307 F.3d at 1058; *see also Carter v. Paynter*, No. C09-0505-MJP-MAT, 2010 WL 1980279, at *2 (W.D. Wash. Apr. 26, 2010), report and recommendation adopted, No. C09-0505-MJP-MAT, 2010 WL 1980274 (W.D. Wash. May 17, 2010) (citing *Bagley v. CMC Real Est. Corp.*, 925 F.2d 758, 760 (9th Cir. 1991) ("A § 1983 action accrues and the statute of limitations begins to run when a plaintiff knows or has reason to know of the injury which is the basis of his or her action."). Mr. Topolski was sent a letter on October 1, 2021 informing him that he would be officially separated on October 18, 2021. Dkt. 1 ¶ 5.22. Mr. Topolski appealed the decision, and the separation was upheld on November 23, 2021. *Id.* ¶ 5.23. These events were "simply the effect" of the September 30 decision and not a "separately unconstitutional act." *RK Ventures*, 307 F.3d at 1058. They were an "inevitable consequence of the [Department's] earlier initiation of the [separation] proceeding." *Id.* Thus, the operative decision date remains September 30, 2021. Dkt. 1 ¶ 5.20; *RK Ventures*, 307 F.3d at 1058.

The date of Mr. Topolski's dismissal—the date when he no longer worked for the Department—also does not affect the statute of limitations. In *RK Ventures*, the court further

explained: "As the Supreme Court established in *Ricks* and *Chardon*, the question is when the operative decision was made, not when the decision is carried out." *Id.* at 1059. In *Ricks*, for example, "the trustees of a college denied tenure to plaintiff, a professor, but they offered him a 'terminal' contract to teach one additional year." *Id.* (citing *Ricks*, 449 U.S. at 253). Ricks sued, claiming his tenure denial was discriminatory. But the Supreme Court held that the limitations period "commenced when the tenure decision was made and Ricks was notified, not when the employment ended." *Id.* (citing *Ricks*, 449 U.S. at 258). Similarly, in *Chardon*, the Supreme Court held that the statute of limitations began to run when plaintiffs, nontenured administrators of the Puerto Rico Department of Education, were given notice of termination, not on the date their employment terminated. *Id.* (citing *Chardon*, 454 U.S. at 8). The Court explained that "'[t]he fact of termination is not itself an illegal act.' . . . '[T]he alleged illegal act was . . . discrimination in the tenure decision.'" *Id.* (quoting *Chardon*, 454 U.S. at 8).

Mr. Topolski's termination would not be a separate unconstitutional act. *See id.* Rather, the Department's decision not to accommodate Mr. Topolski was the "operative alleged illegal act.'" *Id.*

Mr. Topolski's grievance consideration does not save his case either. *Ricks* held that "[t]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitation periods." *Ricks*, 449 U.S. at 261 (citing *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 230 (1976)). The grievance does not extend the date of the operative decision. Thus, because the case was not filed until October 16, 2024—more than three years after the operative decision—the statute of limitations had run and all of Mr. Topolski's Section 1983 claims are barred. *See id.*; *see generally* Dkt. 1. Because this defect

cannot be cured through the allegation of other facts or the naming of another defendant, the

Court DISMISSES Mr. Topolski's federal constitutional claims with prejudice.[1]

**B.     There is no private right of action for Mr. Topolski's state constitutional claim.**

In Mr. Topolski's claim for violation of his right to privacy, he cites Article I, Section 7

of the Washington State Constitution in addition to the Fourth Amendment of the United States

Constitution. Dkt. 1 ¶ 7.1. But "Washington law has no counterpart to 42 U.S.C. § 1983 . . . and

Washington courts have rejected attempts to create a private right of action for damages under

the Washington Constitution absent guidance from the legislature." *Dunn v. City of Seattle*, 420

F. Supp. 3d 1148, 1156 (W.D. Wash. 2019). Because there is no private right of action for this

claim, it too will be DISMISSED with prejudice.

**C.     Mr. Topolski has alleged a Title VII claim.**

To allege a prima facie case of religious discrimination under Title VII, a plaintiff must

plead that "(1) a bona fide religious belief of the employee conflicted with an employment

policy; (2) the employee informed the employer of the conflict; and (3) the employee was

penalized in some way because of the conflict." *Bartholomew v. Washington*, 725 F. Supp. 3d

1225, 1230 (W.D. Wash. 2024) (quoting E.*E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610,

614 (9th Cir. 1988)). Mr. Topolski alleges that he had a bona fide religious belief, that the

Department granted him an exception for the belief, but that the Department failed to consider a

---

[1] As part of his PREP Act claim, Mr. Topolski also alleged a violation of his right to informed consent under Washington's informed consent statutes. Dkt. 1 ¶ 7.3. This is a form of medical malpractice claim. "Negligence and informed consent are alternative methods of imposing liability on a health care practitioner." *Swanson v. United States*, No. 2:24-CV-0227-TOR, 2024 WL 4730538, at *3 (E.D. Wash. Nov. 8, 2024) (quoting *Buckland v. Univ. of Washington*, 137 Wash. 2d 651, 659 (1999)). Although Mr. Topolski has not alleged the elements of such a claim, *see* RCW 7.70.030–.050, even if he had, it too would be barred by the relevant statute of limitations. RCW 4.16.350 (action must be commenced "within three years of the act or omission alleged to have caused the injury or condition").

reasonable accommodation for him, and thus terminated his employment. Dkt. 1 ¶¶ 5.13–5.15, 5.20, 5.23, 7.5.

The Court must construe a pro se plaintiff's pleadings liberally and "afford the petitioner the benefit of any doubt." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). But the Court does not assume the truth of legal conclusions presented as facts (*see Twombly*, 550 U.S. at 555) and mere conclusory statements are not enough to support a claim. *Iqbal*, 556 U.S. at 678. "A liberal construction of a pro se complaint . . . does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist*, 32 F.4th at 774 (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)). Here, Mr. Topolski has adequately pled a Title VII religious discrimination claim. *See also* Dkt. 1 ¶ 7.5 ("Defendant has violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 17 USC 2000.").

Although the Department does not address Mr. Topolski's Title VII claim directly, it argues that it is entitled to sovereign immunity from his federal claims. *See* Dkt. 13 at 12–13. Generally, the Department is protected from suit in federal court by sovereign immunity. *See Kim v. Washington State Dep't of Licensing*, 168 F. App'x 774, 775 (9th Cir. 2006) ("The district court properly concluded that [plaintiff's] claims against the Washington State Department of Licensing and its director were barred by sovereign immunity."). But there are a few exceptions to this rule: where the state has waived immunity, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)); where Congress has expressly abrogated immunity, such as under Section 5 of the Fourteenth Amendment, *id.* (citing *Fitzpatrick v. Bitker*, 427 U.S. 445, 451–52 (1976)); and where an individual sues a state official for injunctive relief to stop a violation of federal law, *id.* at 96 (citing *Ex Parte Young*, 209 U.S. 123, 161 (1908)).

Though the Department has sovereign immunity under Section 1983, Title VII explicitly abrogates immunity. *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1221 (9th Cir. 2023) (citing *Fitzpatrick*, 427 U.S. at 453 n.9). The Eleventh Amendment does not bar these claims when they are brought against states or state entities. *Id.*

The Court liberally construes Mr. Topolski's claim for religious discrimination as arising under Title VII and declines to dismiss it for being brought against a state entity. The Department has not moved for dismissal of this claim on any other ground. Thus, the Court will allow this claim to proceed. The Department may address this claim in subsequent briefing if it so chooses.

## V.    CONCLUSION

For these reasons, the motion to dismiss is GRANTED IN PART. Mr. Topolski's Title VII claim remains. All other claims are DISMISSED WITH PREJUDICE.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 11th day of March, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO DISMISS IN PART - 12